**Application of AAT AIRLINES, Inc.**
Docket No. 750207-ACC (CR).    Order No. 12327.
Florida Public Service Commission.
September 24, 1975.

Robert J. Paterno, Miami, for the applicant.

The following commissioners participated in the disposition of this matter — WILLIAM T. MAYO, Chairman, WILLIAM H. BEVIS, PAULA F. HAWKINS.

## BY THE COMMISSION.

Pursuant to notice, the commission held a public hearing on this matter on May 23, 1975 in Key West. After considering the entire record herein, the commission now enters its order in this cause.

By this application, AAT Airlines, Inc., d/b/a Air Sunshine, seeks to place into effect the following special fares.

1) A half rate applying only to senior citizens (age 65 and over), applicable to all routes served by Air Sunshine, on a standby basis, for a six month period of time.

2) A similar half fare rate for clergy members.

3) A reduced fare for a "Night Owl Flight" between Key West and Miami, Florida.

4) An inclusive tour fare at reduced rates.

At the hearing, numerous public witnesses testified as to the need for reduced fares for senior citizens. A major concern of these witnesses was the need to travel between Key West and Miami in order to obtain neccessary medical attention that is not otherwise available in the Key West area. There was also evidence that the highway conditions between Key West and Miami were such that many senior citizens could not make the trip in their private automobiles.

Air Sunshine presented evidence that many of its flights are operating at significantly less than a 50% load factor; thus leaving many seats available for senior citizens flying on a standby basis. The carrier anticipates that the low senior citizens fare will attract almost 900 passengers per month, or approximately 15 passengers per flight. This increase would generate approximately $16,146 in additional revenue with no significant increase in costs.

Air Sunshine has further requested that the same half rate fare apply to clergy members. There were no witnesses at the hearing to testify as to a need for this fare nor did the carrier produce any sufficient justification for such a fare.

The carrier also seeks to establish a "Night Owl Flight," and offer approximately a 40% discount on this flight. Air Sunshine proposes to use their last flight of the day between Key West and Miami, departing at 6:30 p.m., as this "Night Owl Flight." While we recognize that most of the major air carriers offer reduced rates on certain "off-peak" flights, it should be pointed out that these reduced fares apply only on flights originating at or around 10 p.m. or before 6 or 7 a.m. It is felt that a reduced rate is in order if passengers are willing to fly at such off-peak hours since their air carrier is permitted to make greater utilization of its aircraft. However,

it is inconceivable that a 6:30 p.m. flight could be considered "off-peak" — the evidence indicates that the operation of this flight at reduced fares would not attract new passengers, but would merely divert full paying passengers from the carrier's earlier flights.

Air Sunshine has also requested authority to publish an "inclusive tour" fare between all points it serves except between Key West and Marathon. The carrier is offering various discounts depending on origin and destination. The carrier presented evidence pertaining to the following tours — "Fishing Weekender," "Reef Trip" and "Key West-Freeport." The evidence presented indicated that there was a need for these tours, that they would promote the economy of the area, and that they would provide much needed revenue to the carrier.

Southeast Airlines which operates in direct competition with Air Sunshine between Miami, Marathon and Key West, protested the reduced fares proposed by Air Sunshine. Southeast testified that their earnings were such that any decrease in revenue would be harmful to their operating capabilities. The carrier further testified, however, that if the commission authorized these reduced fares for Air Sunshine, they would be required to file similar fares.

Based on the record in this case, the commission finds that the senior citizen fare and the "Fishing Weekender," the "Reef Trip," and the "Key West-Freeport" inclusive tour fares are justified and that any adverse effect that the implementation of these fares would have on the competing carrier is outweighed by benefits that would accrue to the public by the implementation thereof. Therefore, the commission finds that these fares should be authorized for a trial period of six months.

The commission further finds that with respect to the inclusive tour fare, the public interest requires that the carrier set forth rules requiring passengers to purchase tickets at least ten days before the date of departure. Additionally, a passenger shall receive this reduced inclusive tour fare only in conjunction with the purchase of a total inclusive tour.

Additionally, the following prescribed accounting treatment shall be followed for the recording of revenues and certain expenses of the inclusive tour fares. The inclusive tour fare revenue will be recorded in its own account with no commingling of any other type of revenue. The expenses of providing incidentals such as hotel rooms, meals, tours, etc. shall be kept in an account or accounts separate from the air carrier's operating expenses, which are related to the providing of transportation services to the public. However, immaterial amounts of general and administrative expenses related to the inclusive tour fares may be included in the carrier's general and administrative expenses.

Based on the foregoing it is therefore ordered that the application of AAT Airlines, Inc., d/b/a Air Sunshine, for authority to place into effect certain reduced fares is granted in part so as to authorize the carrier to publish senior citizen fares and the "Fishing Weekender," the "Reef Trip" and the "Key West-Freeport" inclusive tour fares, as set forth in the carrier's proposed revised tariff sheet, said fares to be authorized for a six-month period, subject to the restrictions set forth above.

It is further ordered that Air Sunshine shall keep its financial records with respect to the inclusive tour fare in the manner set forth above and shall further submit a weekly report to the commission setting forth the number of passengers on each flight using the inclusive tour and senior citizen reduced fare.

It is further ordered that AAT Airlines, Inc., d/b/a Air Sunshine file with this commission for its approval, appropriate tariff revisions consistent with this order, said revisions to become effective not sooner than fifteen days from the date of this order.

It is further ordered that protestant Southeast Airlines, Inc. is authorized to submit a similar tariff revision to the commission for approval.